**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ELVIN LeBRON,

                          Plaintiff,

    v.                                        No. 05-CV-172 (GLS/DRH)

D. SWAITEK; CERNE, Correctional Officer; COLLESENO, Correctional Officer; A. KEINER, Correctional Officer; R. HAGEDORN, C.O.; D. GRANT, Sgt.; BECKER, D.S.P.; JOHN J. BURNS; JAMES G. BERBARG; DONALD SELSKY; GLENN S. GOORD; ANTHONY J. ANNUCCI; LUCIEN J. LeCLAIRE, JR.; JOHN H. NUTTALL; CHARLES M. DEVANE; LESTER N. WRIGHT; CHARLES HARVEY; THOMAS G. EAGEN; K. BELLAMY; OLSON, C.O.; C. SINICKI, C.O.; JOHN DOE, Sgt. # 3; J. LAMBERT; T. BRECKON; JAMES CONWAY, F.D.S.; D. GIROM; JOHN DOE # 1; JOHN DOE # 2; COOPER, Sgt.; KENNEALLY, Lt.; MAYVILLE, C.O.; JOHN DOE # 4-6; G. KIERNERT; JOHN J. DONELLI; THOMAS RICKS; B. GRANISH; WOODROOF, C.O.; K. DOYLE, Correctional Officer; M. LeCLAIRE; P. WHITFORD; S. STUART; BRUCE J. SMITH; JOHN J. LeCLAIRE; R. WELLS, C.O.; SGT. SORENZON; GREGORY L. BOYTON; A.C. ROCQUE, Lt.; J. COLBY, Lt.; CAPT. FAULKNER; DONALD FITZPATRICK, Capt.; DAVID L. McNULTY; B. JARVIS; A.B. OLSON; WILLIAM BURKE; KEVIN L. McLAUGHTON; THOMAS C. SANDERS; PEGGY WALCOTT; RICHARD D. ROY; S. BUSHIE; JOHN MEHRMANN; C.C. PASQUIL; R. PERHAM; JOHN DOE # 7; M. LeFERSE; CAPTAIN RACETTE; JOSEPH E. McCOY; ROBERT J. MURPHY; BETH TOMIE; MR. JEFFREY HALE; CAYUNTA, C.O.; McKERNON, C.O.; STEADLE, C.O.; SGT. SEPIOL; J. LITWEILER, Sgt.; LT. MARSHALL; M.P. CORCORAN; PAUL CHAPPINS, JR.; MICHAEL McGINNIS, Supt.; MARGARET LITZENBERGER; JEAN BOTTA; D. HILLARD; F. BUTLER; JOHN DOE # 8, # 9; D. SULLIVAN, Capt.; LT. DONAHUE; A. BARTLETT; HETRICK, Sgt.; C.O. P. FOLEY; C.O. BAUMGARDNER; C.O. KAZMIERCZAK; SGT. WETZEL; and M. SHEAHAN, Captain,

                                      Defendants.

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |

ELVIN LeBRON
No. 95-A-0121
Plaintiff Pro Se
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929-2001

| | |
|---|---|
| HON. ELIOT SPITZER | STEPHEN M. KERWIN, ESQ. |
| Attorney General for the | Assistant Attorney General |
|   State of New York | |
| Attorney for Defendants | |
| The Capitol | |
| Albany, New York 12224-0341 | |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Elvin LeBron ("LeBron"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, ninety-five DOCS employees, violated his constitutional rights under the First and Fourteenth Amendments. Am. Compl. (Docket No. 6). Presently pending is the motion of sixty-nine defendants[2] to dismiss pursuant to Fed. R.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Foley, Baumgardner, Kazmierczak, Wetzel, M. Sheahan, (Berbary) (sued as Berbarg), Selsky, Goord, Annucci, L. LeClaire, Nuttall, Devane, Wright, Harvey, Eagen, Bellamy, Olson, Sinicki, Lambert, Breckon, Conway, Girom, Cooper, Kenneally, Donelli, Granish, Woodroof, Swaitek, M. LeClaire, Smith, Wells, Boyton, Rocque, Colby, McNulty, Jarvis, Burke, Walcott, Roy, Meehan (sued as Mehrmann), Bushie, Perham, Racette, McCoy, Murphy, Keiner, Tomic (sued as Tomie), Hale, McKernon, Steadle, Sepiol, Litweiler, Marshall, Corcoran, Chappins, R. Hagedorn, McGinnis, Litzenberger, Botta, Hillard, Butler, Sullivan, Donahue, Bartlett, Hetrick, Grant, and Becker. By letter of February 15, 2006, defendants Strat (sued as S. Stuart) and J. LeClaire joined in defendants' motion to dismiss. See Docket No. 117.

Civ. P. 12(b)(6). Docket No. 112. LeBron opposes the motion. Docket No. 121. For the following reasons, it is recommended that the moving defendants' motion be granted. It is also recommended that the amended complaint be dismissed without prejudice as to the unserved defendants. See Section IV infra.

## I. Background

The facts as alleged in the amended complaint are assumed to be true for the purposes of this motion. See Section II(A) infra.

At all relevant times, LeBron was an inmate in the custody of DOCS. On April 3, 2000, while at Collins Correctional Facility ("Collins"), LeBron was issued a misbehavior report for possessing twelve pictures that were gang-related. Am. Compl. at ¶¶ 2-5. Before the disciplinary hearing, LeBron was denied an opportunity to review the twelve pictures. Id. at ¶ 10. Although LeBron was unable to walk to the hearing, defendants conducted the hearing outside his presence and found LeBron guilty. Id. at ¶¶ 14-21. LeBron was sentenced to ninety days keeplock[3], sixty days of which were suspended, and ninety days loss of commissary, recreation, packages, and telephone. Id. at ¶ 27. On July 17, 2002, the finding and sentence were administratively reversed. Id. at ¶ 36.

On August 5, 2000, while at Attica Correctional Facility ("Attica"), LeBron was issued a misbehavior report for possessing unauthorized organizational materials. Id. at ¶¶ 43-48. At the subsequent disciplinary hearing, LeBron was denied the opportunity to ask the

---

[3]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

3

witnesses questions and properly preserve the record. Id. at ¶¶ 49-67. On August 18, 2000, LeBron was found guilty and sentenced to fifteen days keeplock, loss of telephone privileges, and counsel reprimand. Id. at ¶ 71. On January 12, 2002, the finding and sentence were administratively reversed. Id. at ¶ 83.

On February 2, 2002, while at Upstate Correctional Facility ("Upstate"), LeBron gave seventeen documents to defendant Mayville for copying. Id. at ¶ 89. However, the documents were lost and Mayville denied ever receiving the documents. Id. at ¶ 92. LeBron filed a grievance, which was denied. Id. at ¶¶ 97-100.

On or about January 10 or 12, 2002, while at Adirondack Correctional Facility ("Adirondack"), LeBron was issued a misbehavior report for providing unauthorized legal assistance. Id. at ¶¶ 141, 147. At a subsequent disciplinary hearing, LeBron was denied the opportunity to, inter alia, call witnesses or properly preserve the record, and LeBron was also denied documents relevant to his defense. Id. at ¶¶ 152-161. LeBron was found guilty and was sentenced to 180 days in the Special Housing Unit ("SHU"),[4] loss of commissary, packages, telephones, and good time credits. Id. at ¶ 162. On October 23, 2002, the finding and sentence were administratively reversed. Id. at ¶ 199.

On or about September 9, 2003, LeBron was issued a misbehavior report for an incident involving a letter mailed by another inmate requesting newspaper articles that LeBron had been denied earlier. Id. at ¶¶ 203-222. At a subsequent disciplinary hearing,

---

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

LeBron was denied the opportunity to, inter alia, call witnesses and review documents relevant to his defense. Id. at ¶¶ 227-236. LeBron was found guilty and was sentenced to thirty days keeplock. Id. at ¶ 237. On June 9, 2004, the finding and sentence were administratively reversed. Id. at ¶ 250.

On or about September 10, 2003, LeBron was issued a misbehavior report for soliciting government services without prior approval. Id. at ¶¶ 256-68. At a subsequent disciplinary hearing, LeBron was denied the opportunity to, inter alia, call relevant witnesses or review documents relevant to his defense, and was repeatedly accused by Bartlett of bogging down the hearing. Id. at ¶¶ 271-279. LeBron was found guilty and was sentenced to 180 days SHU, loss of commissary, packages, telephones, and good time credits, and was required to pay 37¢ restitution. Id. at ¶¶ 280-81. On November 24, 2003, the finding and sentence were administratively reversed. Id. at ¶ 290.

On or about February 28, 2004, LeBron was issued a misbehavior report for attempting to write unknown prisoners at unknown facilities. Id. at ¶¶ 296-313. At a subsequent disciplinary hearing, LeBron was denied the opportunity to, inter alia, review documents relevant to his defense or attend a portion of the hearing, and was forced to change his plea from innocent to guilty. Id. at ¶¶ 271-279. LeBron was found guilty and was sentenced to thirty days keeplock. Id. at ¶ 325. LeBron's administrative appeal was denied. Id. at ¶ 333. This action followed.

## II. Discussion

LeBron asserts seven causes of action in his amended complaint, each alleging that

defendants violated his First Amendment, Due Process, and Equal Protection rights.[5] The moving defendants seek dismissal of all claims.

### A. Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In evaluating whether these requirements are met, complaints prepared pro se are held to less stringent standards than formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-21 (1972).[6]

When a motion to dismiss is brought prior to an answer and discovery, a court is

---

[5] The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "'To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class.'" Doe v. Goord, No. 04 Civ. 0570(AJP), 2004 WL 2829876, at *14 (S.D.N.Y. Dec. 10, 2004) (quoting Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Here, liberally construing the amended complaint, LeBron has failed to allege any facts that could be reasonably interpreted as an Equal Protection violation. Therefore, defendants' motion as to all such equal protection claims should be granted.

[6] LeBron is not without litigation experience, however, having filed nine other federal actions since 1997. See U.S. Party/Case Index (visited Sept. 21, 2006) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

loath to grant the motion. Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing Wade v. Johnson Controls, Inc., 693 F.2d 19, 22 (2d Cir. 1982)). This is true even if "the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him [or her] to relief." Id. "'This caution against dismissal applies with even greater force where the complaint is pro se, or where the plaintiff complains of a civil rights violation.'" Lugo, 114 F. Supp. 2d at 113 (citation omitted).

### B. Statute of Limitations

Defendants move to dismiss LeBron's first, second, and fourth causes of action on the ground that each is barred by the statute of limitations. While there is no provision in 42 U.S.C. § 1983 for the statute of limitations for a civil rights claim, § 1988 provides that state law may apply if not inconsistent with the Constitution or federal law. 42 U.S.C. § 1988(a) (2003); Moor v. County of Alameda, 411 U.S. 693, 702-03 (1973). In New York, the applicable statute of limitations for a § 1983 suit is the three-year period governing suits to recover upon a liability created or imposed by statute. See Owens v. Okure, 488 U.S. 235, 249-51 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970); N.Y. C.P.L.R. 214(2) (McKinney 2003). Federal law governs the determination of the accrual date for the purposes of a § 1983 claim. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002). The claim accrues when the plaintiff "knows or has reason to know" of the harm. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). The critical time for accrual purposes is when a plaintiff is aware that he or she is suffering a wrong for which damages may be recovered in a civil rights action. Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).

Here, LeBron's initial complaint was filed on February 9, 2005. Compl. (Docket No. 1). The Second Circuit has held that a complaint is deemed "filed" by an inmate when it is delivered to prison officials. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993). Therefore, even though this action was not filed until February 9, 2005, the original complaint was signed on January 13, 2005, the date which will be used for purposes of determining defendants' statute of limitations arguments. See Melendez v. Wilson, No. Civ. 04-0073(PKC), 2006 WL 2621083, at *8 (S.D.N.Y. Sept. 12, 2006) (using the date an inmate signed his complaint as the date on which the action commenced).

### 1. First and Second Cause of Action

Defendants contend that LeBron's first cause of action accrued on or about June 19, 2000, when LeBron's administrative appeal was denied. See Defs. Mem. of Law (Docket No. 112) at 6; see also Am. Compl. at ¶ 34. Defendants further contend that LeBron's second cause of action accrued on or about August 18, 2000, when LeBron was found guilty of the charges levied against him. See Defs. Mem. of Law at 9; see also Am. Compl. at ¶ 68.[7] LeBron contends that his first and second causes of action did not accrue until the administrative appeals were reversed. See Pl. Reply Mem. of Law (Docket No. 121) at 1-3. LeBron's first and second causes of action were administratively reversed on July 12, 2002 and January 14, 2002 respectively. Am. Compl. at ¶¶ 36, 83.

The Second Circuit has held that "a cause of action under § 1983 for the denial of due process in a prison disciplinary hearing accrues for statute of limitations purposes at

---

[7] LeBron's administrative appeal as to his second cause of action was denied on August 24, 2000. See Am. Compl. at ¶ 74.

8

the time that a prisoner succeeds in having the disciplinary ruling reversed in state court." Abbas v. Dixon, No. Civ. 02-0809(SR), 2004 WL 2202640, at *2 (W.D.N.Y. Sept. 30, 2004). (citing Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996)). However, the Second Circuit has since determined that Black applied "only to challenges to the fact or length of a prisoner's confinement where federal habeas corpus is otherwise actually available." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). Thus, "where a prisoner claims a deprivation of due process in disciplinary hearings that resulted in punishment not affecting the fact or duration of his overall confinement, his § 1983 action is not barred by the fact that the disciplinary rulings have not been invalidated through administrative or judicial review." Sims v. Artuz, 230 F.3d 14, 24 (2d Cir. 2000).

Here, LeBron concedes that neither disciplinary hearing resulted in the loss of good times credits or affected the overall duration of his confinement. Am. Compl. at ¶¶ 28, 72. Since LeBron's "punishment following the challenged disciplinary hearing[s] did not result in a loss of good time credits or otherwise impact the fact or duration of his overall confinement, Black does not affect the accrual of [LeBron's] claim[s]." Abbas, 2004 WL 2202640, at *2. As discussed supra, § 1983 claims accrue when the plaintiff "knows or has reason to know" of the harm. See Eagleston, 41 F.3d at 871. Thus, LeBron's denial of due process claims accrued no later than June 19, 2000 and August 24, 2000, the dates when LeBron's administrative appeals were denied.[8] See Abbas, 2004 WL 2202640, at *2.

---

[8] It is unclear whether the statute of limitations for a § 1983 action is tolled while an incarcerated inmate exhausts his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Compare Taylor v. New York Dep't of Corrs., No. Civ. 03-1929(PKC), 2004 WL 2979910, at *11 (S.D.N.Y. Dec. 22, 2004) ("section 1997e(a) is the sort of 'statutory prohibition' on the commencement of an action that gives rise to tolling under CPLR § 204(a)"), with Thomas v. Henry, No. Civ. 02-2584(SJR)(DFE), 2002

9

Since LeBron exhausted his administrative remedies more than three years before he filed his initial complaint, his claims are untimely.

Therefore, defendants' motion on this ground should be granted as to the first and second causes of action.

## 2. Fourth Cause of Action

Defendants contend that all of the events underlying LeBron's fourth cause of action occurred more than three years before February 9, 2005 when his initial complaint was filed with the Court. See Defs. Mem. of Law at 13. LeBron contends that his fourth cause of action did not accrue until October 23, 2002, when his disciplinary hearing was administratively reversed. Pl. Reply Mem. of Law at 4.

Here, unlike his first and second causes of action, LeBron alleges that as a result of the disciplinary hearing, he lost good time credits. See Am. Compl. at ¶ 162. As discussed supra, a cause of action under § 1983 for the denial of due process in a prison disciplinary hearing that affected the duration of an inmate's confinement accrues when the disciplinary ruling is invalidated through administrative or judicial review. See Section II(B)(1) supra. Since LeBron alleges a loss of good time credit, the claim properly accrued on October 23, 2002 when his disciplinary hearing was administratively reversed. Thus, because LeBron's initial complaint was filed on January 14, 2005, less than three years after this claim accrued, the claim is not time-barred.

---

WL 922388, at *2 (S.D.N.Y. May 7, 2002) (holding that the pendency of a grievance does not toll the statute of limitations). However, even assuming that the statute of limitations was tolled, LeBron's claims are still untimely.

10

Therefore, defendants' motion on this ground should be denied as to the fourth cause of action.

### C. Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

### 1. First, Second, Fifth, and Seventh Causes of Action

In his first, second, fifth, and seventh causes of action, LeBron contends that his due process rights were violated during various disciplinary hearings. However, as a result of each of these hearings, LeBron never received more than thirty days of keeplock.[9] "As a number of district courts have noted, 'the decisions in the Second Circuit are unanimous that keeplock . . . of 30 days or less in New York prisons is not 'atypical or significant

---

[9] Claim One: "D.S.P Becker sentenced plaintiff to ninety days keep-lock, suspended sixty days keep-lock for ninety days, and ninety days loss of commissary-recreation-packages-and phones." Am. Compl. at ¶ 27. Claim Two: "Lt. Breckon sentenced plaintiff to fifteen days keep-lock, loss of phones, and counsel reprimand." Id. at ¶ 71. Claim Five: "Lt. Donahue sentenced plaintiff to thirty days keep-lock." Id. at ¶ 237. Claim Seven: "Lt. Donahue sentenced plaintiff to thirty days keep-lock and confiscated [LeBron's] letters." Id. at ¶ 325.

11

hardship' under Sandin.'" Smart v. Goord, No. Civ. 04-8850(RWS), 2006 WL 2089889, at *7 (S.D.N.Y. July 27, 2006) (quoting Williams v. Keane, No. Civ. 95-0379(AJP)(JGK), 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases)).[10] Even when aggregating the separate disciplinary sentences, LeBron has failed to show that his confinement was atypical or significant. See Sims, 230 F.3d at 23-24. Thus, LeBron has failed to establish the existence of a protected liberty interest.

Accordingly, it is recommended that defendants' motion on this ground be granted as to the first, second, fifth, and seventh causes of action.[11]

### 2. Sixth Cause of Action

Defendants contend that LeBron's due process claims as to his sixth cause of action are moot because the disciplinary hearing that LeBron alleges was unconstitutional was reversed. See Defs. Mem. of Law at 21-22.

On or about September 23, 2003, LeBron was found guilty at a Tier III disciplinary hearing[12] and "sentenced . . . to one hundred eighty days S.H.U., loss of commissary-

---

[10] Further, any loss of recreation, "phone, package, and commissary privileges does not give rise to a protected liberty interest under New York law." Smart, 2006 WL 2089889, at *7 (citing Husbands v. McClellan, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) (citing Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)).

[11] Although LeBron alleges a due process violation in his fourth cause of action, the defendants involved with the disciplinary hearing have not appeared in this action and, thus, defendants do not address this issue. See Defs. Mem. of Law at 15 n.2.

[12] DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (1995).

packages-phone-good time, and .37¢ restitution." Am. Compl. at ¶ 281. On November 24, 2003, the hearing was administratively reversed and LeBron was granted a new hearing. Id. at ¶ 290; see also Kerwin Decl. (Docket No. 112) at Ex. A.[13] "Where prison disciplinary systems err, and then act promptly before punishment can be visited upon a prisoner as a result of that error, the Second Circuit repeatedly has held that no cause of action exists for that prisoner." Cespedes v. Coughlin, 956 F. Supp. 454, 473 (S.D.N.Y. 1997).

Here, during the roughly two months it took for LeBron's September 23, 2003, disciplinary hearing to be reversed, he was already confined to the SHU as a result of an unrelated misbehavior report and was not due to be released until December 27, 2004. See Kerwin Decl. at Ex. A. Thus, LeBron would not have been released from the SHU pending appeal of his September 23 disciplinary hearing and was not penalized for any of the conduct for which he was found guilty during that hearing. Because LeBron would not have been released from the SHU before his appeal was administratively reversed, LeBron "suffered no interference with a liberty interest and has no valid claim for relief." Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992); see also Russell v. Scully, 15 F.3d 219, 222

---

[13] At the rehearing, LeBron was found guilty and sentenced to sixty days in SHU. See Kerwin Decl. at Ex. A (copy of the "Inmate Disciplinary History on inmate Elvin LeBron, #95-A-0121"). However, LeBron's amended complaint does not allege any constitutional violations arising from this rehearing. Further, this Court's consideration of LeBron's inmate disciplinary history does not compel defendants' motion to dismiss to be converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. See Gilmore v. Stone, No. Civ. 01-880(LEK)(GLS), 2003 WL 1923734, at *2 (N.D.N.Y. Apr. 23, 2003) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.'" (citing Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (alteration in original) (citation omitted)).

(2d Cir. 1993) ("It is clear from the fact that [the inmate] continued to be confined in the SHU after the reversal [of the disciplinary hearing] that [the inmate] would not have been released from the SHU pending the appeal . . . . Confinement in the SHU would thus have continued whether or not the punishment began, and [the inmate] thus did not suffer a constitutional harm by the confinement during the appeal period.").

Accordingly, it is recommended that defendants' motion on this ground as to the sixth cause of action be granted.

### D. Access to Courts

In his third cause of action, LeBron alleges that defendants lost seventeen documents that supported his claims in another legal action. Am. Compl. at ¶¶ 89-96. Further, liberally construed, LeBron's fifth cause of action alleges that Tomic's denial of his request for newspaper articles regarding his criminal convictions constituted a denial of access to courts. Id. at ¶ 203. Defendants contend that these claims are without merit.

All persons have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997). To establish a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded. Lewis, 518 U.S. at 351; Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004). A plaintiff must demonstrate not only that a defendant's conduct was deliberate and malicious but also that this conduct caused an actual injury such as the "dismissal of an otherwise meritorious legal claim." Cancel v. Goord, No. 00-CV-2042(LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing Lewis, 518 U.S. at 351). Here, LeBron has failed to allege any actual injury from either incident, much less that

14

defendants' conduct was "deliberate and malicious."

Therefore, it is recommended that defendants' motion on this ground be granted.[14]

### III. Injunctive Relief

LeBron seeks expungement of his disciplinary record for violating Rules 105.12 and 180.11 and also the elimination of those rules. See Am. Compl. at ¶¶ 39-40, 85-86, 252-53, 292-93, 353-55. LeBron sues all defendants in their individual capacities. See id. at 1-2. However, as discussed supra, LeBron has failed sufficiently to allege that defendants violated his constitutional rights in any way. Further, LeBron has failed to allege that any of the named defendants are in a position to expunge the disciplinary determinations made against him. See Nicholas v. Tucker, No. Civ. 95-9705(LAK), 2002 WL 31251668, at *1 (S.D.N.Y. Oct. 8, 2002). Thus, LeBron's claim for injunctive relief is without merit.

LeBron also seeks expungement of the records of all other inmates who violated Rules 105.12 and 180.11. However, LeBron has failed to seek class certification for all other inmates who have violated these rules. Thus, LeBron has failed to demonstrate that he has standing to seek expungement of other inmates' records.

Therefore, it is recommended that defendants' motion on this ground be granted.

---

[14] Liberally construed, the amended complaint may also allege a deprivation of LeBron's Fourth Amendment protection against unreasonable searches and seizures. See Am. Compl. at ¶¶ 118-36, 164 (alleging that defendants repeatedly conducted random searches of LeBron's living quarters). However, the Fourth Amendment does not prohibit such warrantless searches in a prison environment. See Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). Therefore, LeBron has no viable claim on this ground.

15

### IV. Failure to Serve Defendants Does 1-9, Cerne, Colleseno, Burns, Mayville, Ricks, Doyle, Whitford, Sorenzon, Faulkner, Fitzpatrick, Olson, McLaughton, Sanders, Paquil, LeFerse, and Cayunta

LeBron's amended complaint asserts claims against John Does 1-9, defendants who have neither been identified nor served with the complaint. Rule 4(m) of the Federal Rules of Civil Procedure requires that service of process be effectuated within 120 days of the date of the filing of the complaint. See N.D.N.Y.L.R. 4.1(b). Because defendants John Does 1-9 have not been identified by LeBron or served with the amended complaint, it is recommended that the amended complaint be dismissed without prejudice against these defendants.

LeBron's amended complaint also asserts claims against Cerne, Colleseno, Burns, Mayville, Ricks, Doyle, Whitford, Sorenzon, Faulkner, Fitzpatrick, Olson, McLaughton, Sanders, Paquil, LeFerse, and Cayunta, defendants who have not been served with the amended complaint. Therefore, because these defendants have not been served with the amended complaint, it is recommended that the amended complaint also be dismissed without prejudice against these defendants.

### V. Conclusion[15]

For the reasons stated above, it is hereby:

**RECOMMENDED** that:

> 1. Defendants' motion to dismiss (Docket No. 112) be **GRANTED** as to the

---

[15] Defendants also argue that venue is improper for some of LeBron's claims. However, in light of the disposition recommended herein, it is unnecessary to reach this issue.

moving defendants and these defendants should be dismissed from this case; and

        2. The amended complaint be **DISMISSED** without prejudice as to defendants John Does 1-9, Cerne, Colleseno, Burns, Mayville, Ricks, Doyle, Whitford, Sorenzon, Faulkner, Fitzpatrick, Olson, McLaughton, Sanders, Paquil, LeFerse, and Cayunta.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: September 25, 2006
       Albany, New York

*[signature: David R. Homer]*
United States Magistrate Judge